**BECKERS–BEHRENS–GIST LUMBER COMPANY, a Corporation, (Plaintiff) Appellant,**

v.

**Martha Behrens ADAMS, Executrix of the Estate of Charles A. Behrens, Deceased, (Defendant) Respondent.**

No. 29920.

St. Louis Court of Appeals. Missouri.

March 4, 1958.

Sullivan, Joyce & Stewart, John Stewart, James L. Sullivan, St. Louis, for appellant.

Gerwitz & Seegers, Gerald L. Seegers, Paul Gerwitz, Jr., St. Louis, for respondent.

HOUSER, Commissioner.

This is a claim for $2,000 against the Estate of Charles A. Behrens, Deceased, founded upon an open account. The claim was allowed in the probate court but disallowed by the circuit court on appeal. Claimant, Beckers-Behrens-Gist Lumber Company, a corporation, has appealed from the judgment of the Circuit Court of the City of St. Louis denying its claim.

In the circuit court the case was tried upon the facts without a jury. We review the case upon both the law and the evidence as in suits of an equitable nature, not setting aside the judgment unless clearly erroneous. Section 510.310 RSMo 1949, V.A. M.S.

The evidence offered by claimant, both documentary and oral, heard by the court over the objection of executrix, was as follows: Messrs. Beckers, Gist and Charles C. Behrens, each owner of one-third of the shares of the capital stock, were president, vice-president and secretary-treasurer, respectively, and director of the corporation. In 1932 the corporation had a bank account with $30,000 or $40,000 more corporate funds in the account than were needed for current operations. Lacking confidence in the banks Beckers, Gist and Behrens decided to withdraw the surplus funds from the account and divide the amount withdrawn equally in three parts among themselves, under an agreement and understanding that they would pay the money back to the corporation from time to time whenever the corporation should need money and that each would repay the same amount on every such occasion. No particular due date or dates were fixed. The amount was to be put back in the corporate account "when the corporation needed the money." None of the three signed papers acknowledging any debt to the corporation. The arrangement was an "oral gentlemen's agreement" that if the corporation needed money the three would "all put some in." In entering into this agree-

ment Mr. Beckers, president of the corporation, considered that all agreements entered into between the three directors were agreements by the corporation with each particular individual; Mr. Beckers was "acting for the corporation." Mr. Behrens, who acted as bookkeeper, set up a separate ledger sheet in the corporate books for each of the three, in the form of an open account debiting each with the sum of $9,000. Mr. Behrens regarded it as a debt due the corporation. Executrix' attorney referred to it in his opening statement to the trial court as a "loan" and related that Mr. Behrens "borrowed this money from the corporation." Charles C. Behrens died December 2, 1946. The ledger sheets show what purport to be monthly credits for each of the three, designated "salary," and corresponding debits on the same dates and in the same amounts. At the time of the death of Charles C. Behrens the debit balance of the accounts of each of the three, Beckers, Gist and Behrens, had been reduced to $6,900.

Upon the death of Charles C. Behrens his son, Charles A. Behrens, inherited his stock in the corporation. The son took over the duties of his father as secretary-treasurer and bookkeeper and received a salary as such. In conversations with Messrs. Beckers and Gist, Charles A. Behrens assumed and agreed to pay the $6,900 balance under the terms of the original understanding between Beckers, Gist and Charles C. Behrens. Charles A. Behrens scratched out his father's name on the ledger sheet and in his own handwriting wrote after it "Died 12–2–46" and "Chas. A. Behrens (Jan. 2, 1947)." Thereafter the ledger entries are in the handwriting of Charles A. Behrens. No claim was filed against the Estate of Charles C. Behrens, Deceased, for the $6,900 due the corporation because there was an understanding between Charles A. Behrens, Beckers and Gist that such claim not be filed; Charles A. Behrens was going to pay the debt; "the young fellow took it over * * *;" "young Charles came in— we transferred the stock to the son's name

and he assumed everything." Charles A. Behrens agreed that "when the corporation needed money for anything we would all three of us pay." This agreement was made voluntarily by Charles A. Behrens "without giving him anything" or "doing him any favors." Charles A. Behrens died September 10, 1955. Between January, 1946 and August, 1955 the ledger sheets of each of the three show salary credits and debits in equal amounts which purport to have been made monthly, together with occasional additional credits (in such sums as $2,000, $500, $1,000, etc.), until at the time of the death of Charles A. Behrens the balance on the ledger sheet of each of the three, Beckers, Gist and Behrens, had been reduced to $2,000. When additional credits appear on one they appear in the same amount and on the same date on the others. The corporation did not collect anything from any one of the three unless the other two paid. The sums credited to the respective accounts over and above the salary credits were paid by each of the three giving the corporation his own personal check. The last such payment by each of the three was made on April 10, 1951. After that date the entries show only the crediting of the full amount of the salary and the charging of the full amount of the salary each month. The $2,000 balance thus was not changed between April 10, 1951 and September 10, 1955. No demand was made upon Charles A. Behrens during his lifetime for repayment of the $2,000 "because we did not need the money at all. Whenever we needed the money * * * just whenever we needed the money we would all put in—if we were short in cash at the bank."

After Charles A. Behrens' death Messrs. Beckers and Gist sold their stock in the corporation to one Epstein, first paying to the corporation the $2,000 remaining against their respective names on the corporate books. This was done by the payment of a $2,000 check by each of them to facilitate the sale of the stock. There is no evidence in the record that on December 30, 1955,

or later, the corporation needed money, or was short of cash.

After Charles A. Behrens' death and after the sale of the stock by Messrs. Beckers and Gist, the corporation made demand on the Estate of Charles A. Behrens for the $2,000 against his name. Upon refusal of the demand the corporation on May 16, 1956, filed a claim for $2,000 against the estate.

On this appeal appellant takes the position that the trial court erred in rendering judgment denying the claim for the reason that claimant's evidence (documentary and oral) entitled it to judgment, and that none of the defenses interposed by respondent was established. We will consider those defenses, one by one.

Respondent first urges that the oral testimony given by the witness Beckers, formerly president of the corporation, was incompetent under the Dead Man's Statute, Section 491.010 RSMo 1949, V.A.M.S.; that Beckers was incompetent to testify beyond identifying the dates and handwriting of the book entries; that Beckers, as a "party to a suit against an executor," [1] was incompetent to testify to any matter that occurred prior to the probate of the will.

 If Beckers is incompetent to testify in this case his incompetency would stem from the fact that he was a party to the contract or cause of action in issue and on trial, the other party to which is dead, and his incompetency would disqualify him as a witness either in his own favor or in favor of any party to the action claiming under him. The contract in issue was the contract of 1946, entered into by and between Beckers, Gist and Charles A. Behrens, for the benefit of the corporation, whereby, in consideration of their mutual promises, the three owners of the corporation promised to repay the balance of $6,900 remaining on the books against Beckers, Gist and Charles C. Behrens in equal amounts and at the same time or times, as and when the corporation needed money or was short of cash. One entering into a contract for the benefit of a third party is not an incompetent witness (at least if he is not a real party in interest to the action) to testify with respect thereto in an action brought by the beneficiary against the estate of a deceased party to the contract, either on the theory that he has no interest in the outcome of the litigation or that he is not a party from, under or through whom the beneficiary claims his title or interest in the action. Temm v. Temm, 354 Mo. 814, 191 S.W.2d 629; Darnell v. Darnell, Mo., 174 S.W.2d 812, 149 A.L.R. 1125; 97 C.J.S. Witnesses § 170. Beckers was not offered as a witness "to testify in his own favor" because at the time he took the stand he had no personal financial interest in the corporation, or in the contract, or in the outcome of the litigation. By that time he had sold all of his stock and severed his connection with the corporation. A stockholder who has disposed of all of his stock in a corporation is no longer a party in interest disqualified from testifying. 97 C.J.S. Witnesses § 185. It is the witness' interest at the time he is offered as a witness that determines his competency, not his interest at the time of the occurrence or of the formation of the contract. Fink v. Hey, 42 Mo.App. 295; Annotation 163 A.L.R. 1225; 97 C.J.S. Witnesses § 167 b. Nor was Beckers offered as a witness to testify in favor of any party to the action claiming under him. The corporation was not claiming under Beckers. Its claim was not derivative. Its rights, as a third party beneficiary under a contract, were primary rights which it was asserting on its own behalf. Beckers was not disqualified as a witness under § 491.010, supra, and his testimony will be considered on this review.

1. Beckers is not a party to the suit, as respondent contends. The parties to this suit are the corporation and the executrix.

Respondent urges that the claim is barred by the 5-year Statute of Limitations, Section 516.120 RSMo 1949, V.A.M.S.; that the statute began to run at the time of the making of the last payment on the obligation, April 10, 1951, and ran out prior to the filing of the claim on May 16, 1956. The time begins to run under a statute of limitations only after the right to prosecute a claim to a successful conclusion has accrued. Hunter v. Hunter, Mo.Sup., 237 S.W.2d 100; Crawford v. Metropolitan Life Ins. Co., Mo.App., 167 S.W.2d 915; 34 Am.Jur., Limitation of Actions § 116. It does not necessarily begin to run when the liability is created. The liability of Charles A. Behrens to pay was created in 1946 and the amount of the ultimate liability, $2,000, was fixed on April 10, 1951, but the cause of action (the right to successfully maintain an account for the $2,000) did not accrue on April 10, 1951, for the reason that the right of action depended upon the occurrence of a condition precedent. The item of the account which forms the basis of this claim is founded upon a promise to pay to the corporation when, as and if the corporation needed money or was "short of cash in the bank." The accrual of the cause of action, and therefore the commencement of the running of the statute of limitations, would depend upon proof of the occurrence of that condition. See and compare Booth v. Booth & Bayliss Commercial School, Inc., 120 Conn. 221, 180 A. 278, 99 A.L.R. 1517, in which an agreement that no part of accrued salaries be payable to either of the principal stockholders and directors of a corporation unless and until the corporation should have sufficient funds to pay equal amounts to both was held a conditional agreement to pay under which payment was dependent upon fulfillment of the condition. This record fails to reveal any evidence, direct or circumstantial, that the corporation at any time after April 10, 1951 needed money or was short of cash. The occurrence of the condition or contingency was not proved. The opposite was testified to by appellant's only witness,

Beckers, namely, that no demand was made upon Charles A. Behrens for repayment of the $2,000 because the corporation "did not need the money at all." Appellant contends that there was an accrual on December 30, 1955, when Beckers and Gist paid the $2,000 balance owed by each of them. The fact that they paid did not establish that the corporation needed money. Indeed, a different reason appears from Beckers' testimony: they voluntarily paid up in order to facilitate the sale of their stock to Epstein. Since the contingency had not occurred the obligation had not become absolute at the time the claim was filed and the 5-year statute of limitations is no bar.

Respondent urges that the claim is unenforceable because it does not comply with the Statute of Frauds, Section 432.010 RSMo 1949, V.A.M.S. (that it is based upon a promise to pay the debt of another) and that there was no consideration for the promise. The statute of frauds has no application under the facts of this case. Charles A. Behrens assumed an independent, original obligation to pay. His primary object was to serve his own purposes and derive a personal benefit from the arrangement. His promise was in the nature of a direct and original (not a collateral) undertaking. He was obligated under his own debt. Rossen v. Rice, 230 Mo.App. 109, 87 S.W.2d 213; Walker v. Whitten, Mo.App., 38 S.W.2d 480; Moore v. McHaney, 191 Mo.App. 686, 178 S.W. 258; 37 C.J.S. Frauds, Statute of § 21. The promise of Charles A. Behrens was supported by an independent and adequate consideration running to him. That consideration is to be found in the mutual agreements of Messrs. Beckers, Gist and Behrens that each would contribute an equal amount to the corporation when, as and if it needed money and was short of cash. Supplying cash to a corporation short of cash and needing money to operate would benefit the corporation and the owners of the corporation. Behrens, a stockholder, was a part owner of the cor-

poration. The contract with Beckers and Gist increased the value of Behrens' stock. This benefit to Behrens satisfies the law and constitutes a sufficient consideration. The amount of the consideration is immaterial as long as it is appreciable. Green v. Higham, 161 Mo. 333, 61 S.W. 798.

■ There is nothing in the Dead Man's Statute, the Statute of Frauds, the Statute of Limitations, or the requirement that a promise be supported by a valuable consideration that provides any obstacle to the maintenance of this claim and the judgment of the circuit court cannot be sustained on any of these grounds. There is ample proof to support the action of the probate court in *allowing* this claim and it was properly allowed as a claim of the sixth class. It is, however, a contingent claim, and any order relating to its *payment* should be made under the provisions of Vernon's Annotated Missouri Statutes, § 473.390 (Laws of 1955, p. 437, H.B. No. 30, § 148) relating to contingent claims.

Consequently, it is the recommendation of the Commissioner that the judgment of the circuit court from which this appeal was taken be reversed, and that the cause be remanded to the circuit court with directions to affirm the judgment of the probate court allowing this claim but to remand the cause to the probate court with directions to amend its order of September 5, 1956, to show that the claim is allowed as a contingent claim and to state the nature of the contingency, and for further proceedings in the probate court under § 473.390, V.A.M.S., supra, relating to the payment of contingent claims.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, reversed and the cause remanded with directions to the trial court to proceed in accordance with the opinion of the court.

RUDDY, P. J., and ANDERSON, J., concur.

MATTHES, J., not sitting.